## Court of Appeals.

### January, 1902.

### THE PEOPLE v. WESLEY WHEELER.

(16 N. Y. Rep. 487.)

1. LARCENY—PENAL CODE, SECTION 528.

   False statements made to the owner of a residence by a party that he was the owner of the adjoining lots and was about to erect a soap factory thereon, do not constitute false pretenses within the meaning of section 528 of the Penal Code.

2. SAME.

   A man is not guilty of larceny by false pretense, because he has not title to either the real estate or personal property which he undertakes to sell, or says he owns, provided he vests good title in the purchaser at the time he pays the consideration for the property.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 12, 1901, upon an order affirming a judgment of

the Monroe County Court entered·upon a verdict convicting the defendant of grand larceny in the first degree.

The facts, so far as material, are stated in the opinion.

George Raines, for appellant.

Stephen J. Warren, for respondent.

PARKER, Ch. J.    The jury have found that the defendant was guilty of grand larceny in the first degree in that he promoted a scheme by which one Giles F. Kitts was persuaded through false pretenses to part with $800, of which the defendant in the main received the benefit.   Several agents were made use of for that purpose, among them James A. Harris and Albert P. Wickes.   The scheme, briefly, was to sell to Kitts some lots very ,near to a fine residence owned and occupied by him, but which he did not care to buy.   The defendant promised Harris to pay to him a price agreed upon if he should succeed in selling the lots to Kitts, and in order to enable him to do so he proposed to put the title to the lots in his name.   Harris was instructed to go upon the lots with some men and commence operations, which were to be announced as but the initial steps toward the erection of a soap factory.   Wickes was to pretend to be a friend of Kitts, and not a friend of Harris or the others in the scheme, and was to advise Kitts of the threatened erection upon the lots of a factory to be used in the manufacture of soap.   The plans were carried out and the anticipated result ensued, for as soon as Kitts appreciated the manner in which his property was menaced, he set about buying the lots and did buy them on the tenth of November, some three days following Harris' first interview with him, paying therefor $800 and assuming the payment of a mortgage of $1,800, which had been put upon the lots by Harris, and which was but an incident in the scheme to get $2,600 for the lots without making necessary a cash payment of more than $800.

Section 528 of the Penal Code defines larceny in so far as it relates to this case, as follows: "A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either . . . takes from the possession of the true owner, or of any other person; or obtains from such possession by color or aid of fradulent or false representation or pretense, or of any false token or writing; . . . steals such property, and is guilty of larceny."

The theory of the prosecution was that the defendants, through his agents Harris and Wickes, who spoke for him, made false statements or representations as to the intention of Harris to erect a soap factory upon the lots, by which Kitts became frightened into purchasing the property, and that such false representations constituted false pretenses within the meaning of the statute just quoted.

When the trial court came to submit the case to the jury, at the close of a very long trial, he decided that the threats which Harris made to build a soap factory upon the lots in the near future were not false pretenses within the meaning of the statute under which the indictment was framed, and so instructed the jury, a position which met the approval of the Appellate Division, as it does of this court. That left in the judgment of the trial court only one possible ground upon which the case could go to the jury, and he opened its presentation to them in these words:

" So I have decided to send this case to you upon the other allegation contained in the indictment, namely: *That James A. Harris was the owner of the Hague street lots. And the prosecution must stand or fall upon that allegation.* Now, in case you find, as a matter of fact, that James A. Harris was not the owner of these lots; that the assertion of ownership was made to Kitts at the instigation of Wheeler, with the intention of deceiving Kitts into the belief that Harris actually was the owner, and that Kitts by virtue of that representation

was induced to purchase the lots of him and part with his money as the purchase price, then it constitutes a criminally false pretense, and the amount of money obtained being in excess of five hundred dollars, the crime is defined by the statutes of the state as grand larceny in the first degree."

As the jury were authorized to find from the evidence, and the court so instructed them, that Kitts did obtain from Harris what he contracted for, and agreed to and did pay for, namely, the title and possession of the property, the court's position was that it constituted a false pretense within the intendment of the statute if it was stated that Harris had 'title when he had not, although subsequently and before the receipt of the money, title passed into him and by his conveyance was transferred to Kitts. This will sufficiently appear by quoting a single request of the learned counsel for the defendant and the response of the court thereto:

"Defendant's counsel: I ask the court to charge the jury that the representation alleged in the indictment that Harris was the owner of the lots on Hague street cannot be said to be false, if by the papers which passed from Johnson to Harris and from Harris to Kitts, Kitts became legally entitled to the exclusive and permanent use and enjoyment of the possession of the lots on Hague street with the absolute power to sell and convey the same in fee. The Court: I decline to so charge. Defendant's counsel duly excepted."

It is not the law of this state, as we understand it, that a man may be guilty of larceny by false pretense because he has not title to either the real estate or personal property which he undertakes to sell, or says he owns, provided he vests good title in the purchaser at the time he pays the consideration for the property. If a party represents that he has title to property when he knows he has not, and by reason of such representation secures the agreed price without vesting, or intending to vest, title in the would-be purchaser, the crime of course is made out. But there can be no larceny, by false pretense

or otherwise, where the purchaser gets precisely what he deliberately bargains for, and for a price which he agrees to pay, knowing fully the character and value of the property. If the court had charged the jury as the defendant requested, and in pursuance of it they had found that by the conveyance from Johnson to Harris and Harris to Kitts the latter became possessed of the property and vested with the title in fee of the lots, then this case would be within the illustration just made, for Kitts agreed to pay $2,600 for the property by paying $800 down and assuming the payment of a mortgage for $1,800, already a lien upon the property; he knew all about the property, for he had once owned it, and if he got good title and possession through Harris he got everything he contracted for, and hence there was no larceny by false pretense or otherwise.

The wrong which the defendant and his associates perpetrated upon Kitts (if the title to the lots was vested in him) was of an entirely different character from that of larceny by false pretense, in that they so operated on his mind as to induce him to buy property which he did not desire. It may well be that the defendant and the others associated with him in the matter may be guilty of a conspiracy and possibly of some other offenses against the law, but they cannot be held to be guilty of a crime of grand larceny by false pretense, provided it be true that Kitts got good title to the property at the time he paid over the consideration, and the court should have so charged the jury.

The judgment of conviction should be reversed, and a new trial ordered.

GRAY, O'BRIEN, LANDON, CULLEN and WERNER, JJ., concur; HAIGHT, J., not voting.

Judgment of conviction reversed.